JEANNE M. CHRISTENSEN (NY SBN 2622124)
(Admitted *pro hac vice*)
Kenneth D. Walsh (NY SBN 5044086)
(Admitted *pro hac vice*)
**WIGDOR LLP**
85 Fifth Avenue, Fifth Floor
New York, NY 10003
Tel.: (212) 257-6800
Fax: (212) 257-6845
jchristensen@wigdorlaw.com
kwalsh@wigdorlaw.com

JAMIE C. COUCHE (SBN 252001)
**ANDERSON & POOLE, P.C.**
601 California Street, Suite 1300
San Francisco, CA 94108
Tel.: (415) 956-6413
Fax: (415) 956-6416
jcouche@adplaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE 1, JANE DOE 2, JANE DOE 3, JANE DOE 4, JANE DOE 5, JANE DOE 6, JANE DOE 7, JANE DOE 8, and JANE DOE 9, *on behalf of themselves individually and on behalf of a proposed Class of similarly-situated individuals*,<br><br>        Plaintiffs,<br><br>    vs.<br><br>UBER TECHNOLOGIES, INC.,<br><br>        Defendant. | Case No.: 4:17-cv-06571 (YGR)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT UBER TECHNOLOGIES, INC.'S MOTION TO COMPEL ARBITRATION**<br><br>Date: June 26, 2018<br>Time: 2:00 p.m.<br><br>Judge Yvonne Gonzalez Rogers<br>Oakland Courthouse, Courtroom 1 |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................1

I.       NATURE OF PLAINTIFFS' CLAIMS AND THE PARTIES .................................3

         A.       Plaintiffs' Causes of Action.........................................................................3

         B.       Uber, Its Terms and the Arbitration Clause................................................4

                  1.       Uber: A Common Carrier .................................................................4

                  2.       Uber's Terms of Service ..................................................................5

II.      PROCEDURAL BACKGROUND..........................................................................7

LEGAL ARGUMENT ..............................................................................................................7

I.       MOTION TO COMPEL ARBITRATION LEGAL STANDARD ...........................7

II.      THIS COURT CAN AND SHOULD DECIDE THE ISSUE OF ARBITRABILITY ........8

III.     PLAINTIFFS' CLAIMS ARE NOT SUBJECT TO ARBITRATION.................................9

         A.       The Terms Prohibit Injunctive Relief On A Representative  Basis.........................9

         B.       Plaintiffs Did Not Assent to Terms and the Arbitration Clause ...........................12

                  1.       Plaintiffs Did Not Have Actual Notice Of The Arbitration Clause............14

                  2.       Plaintiffs Did Not Have Constructive Notice Of The Arbitration Clause...............................................................................15

                  3.       Uber Could Have Designed Its App To Provide Notice Of The Terms.................................................................................16

                  4.       Users Were Not On Notice Of Uber's Revised Terms ..............................17

         C.       The Arbitration Clause Is Unconscionable ........................................18

         D.       Plaintiffs' Claims Do Not Fall Within The Scope Of The Arbitration Clause.......21

         E.       Additional Considerations Preclude Arbitration..................................23

*Memorandum of Points and Authorities in*
*Opposition to Defendant Uber Technologies, Inc.'s*
*Motion to Compel Arbitration*

*Doe v. Uber Technologies, Inc.*
*Case No.: 4:17-cv-06571(YGR)*

1.      Jane Does 6's And Jane Doe 9's Claims Do Not Relate To Uber's
        Terms..................................................................................................23

2.      Jane Doe 8 Was 16-Years Old When She Created An Account.................24

3.      Jane Doe 5 Was Not Subject to the Terms ...................................................24

4.      Jane Does 1, 4, 7 and 9 Did Not Contract With Defendant ......................25

CONCLUSION..........................................................................................................26

*Memorandum of Points and Authorities in*                    *Doe v. Uber Technologies, Inc.*
*Opposition to Defendant Uber Technologies, Inc.'s*          *Case No.: 4:17-cv-06571(YGR)*
*Motion to Compel Arbitration*

# TABLE OF AUTHORITIES

**Cases**

*Alarcon v. Vital Recovery Servs., Inc.*,
    706 F. App'x 394 (9th Cir. 2017) ........................................................ 8

*Anderson v. Credit One Bank, Nat'l Ass'n*,
    No. 16 Civ. 3125 (MMA), 2017 WL 2258064 (S.D. Cal. May 23, 2017) ........................... 14

*Berg v. Taylor*,
    148 Cal. App. 4th 809 (Cal. Ct. App. 2007) ........................................ 24

*Berkson v. Gogo LLC*,
    97 F. Supp. 3d 359 (E.D.N.Y. 2015) ........................................ 14, 16

*Blair v. Rent-A-Center, Inc.*,
    No. 17 Civ. 02335 (WHA), 2017 WL 4805577 (N.D. Cal. Oct. 25, 2017) ............ 9, 10, 11

*Bustamante v. Intuit, Inc.*,
    141 Cal. App. 4th 199 (Cal. Ct. App. 2006) ........................................ 12, 13

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000) ........................................................ 7, 8

*Cordas v. Uber Techs., Inc.*,
    228 F. Supp. 3d 985 (N.D. Cal. 2017) ........................................ 23

*Crowley Maritime Corp. v. Boston Old Colony Ins. Co.*,
    158 Cal. App. 4th 1061 (Cal. Ct. App. 2008) ........................................ 21

*Doe v. Uber Techs., Inc.*,
    184 F. Supp. 3d 774 (N.D. Cal. 2016) ........................................ 4, 5, 24

*Ellis v. McKinnon Broadcasting Co.*,
    18 Cal. App. 4th 1796 (Cal. Ct. App. 1993) ........................................ 20

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995) ........................................................ 8, 21

*Friedman v. Guthy-Renker LLC*,
    No. 14 Civ. 6009 (ODW), 2015 WL 857800 (C.D. Cal. Feb. 27, 2015) ............ 13, 16, 17

*Goldman Sachs & Co. v. City of Reno*,
    747 F.3d 733 (9th Cir. 2014) ........................................................ 8

Memorandum of Points and Authorities in
Opposition to Defendant Uber Technologies, Inc.'s
Motion to Compel Arbitration

Doe v. Uber Technologies, Inc.
Case No.: 4:17-cv-06571(YGR)

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
   561 U.S. 287 (2010) ................................................................................. 8

*Greene v. Subcontracting Concepts, L.L.C.*,
   No. 13 Civ. 1500 (AJN), 2014 WL 1087999 (S.D.N.Y. Mar. 19, 2014) ............................... 9

*Gutierrez v. Autowest, Inc.*,
   114 Cal. App. 4th 77 (Cal. Ct. App. 2003) ................................................... 18

*Herman v. Seaworld Parks & Entm't, Inc.*,
   No. 14 Civ. 3028, 2016 WL 7447555 (M.D. Fla. Aug. 26, 2016) .............................. 16

*Hong v. CJ CGV Am. Holdings, Inc.*,
   222 Cal. App. 4th 240 (Cal. Ct. App. 2013) ................................................. 8

*Ingle v. Circuit City Stores, Inc.*,
   328 F.3d 1165 (9th Cir. 2003) ............................................................... 12

*Lainer v. Uber Techs., Inc.*,
   No. 15 Civ. 9925 (BRO), 2016 WL 7444925 (C.D. Cal. May 11, 2016) ........................... 22

*Little v. Auto Stiegler, Inc.*,
   29 Cal. 4th 1064 (2003) ..................................................................... 18

*Loewen v. Lyft, Inc.*,
   129 F. Supp. 3d 945 (N.D. Cal. 2015) ....................................................... 25

*Long v. Provide Commerce, Inc.*,
   245 Cal. App. 4th 855 (Cal. Ct. App. 2016) ................................................. 15

*Lopez v. Kmart Corp.*,
   No. 15 Civ. 1089 (JSC), 2015 WL 2062606 (N.D. Cal. May 4, 2015) ............................ 24

*Macias v. Excel Bldg. Servs. LLC*,
   767 F. Supp. 2d 1002 (N.D. Cal. 2011) ...................................................... 18

*McArdle v. AT&T Mobility LLC*,
   No. 09 Civ. 01117 (CW), 2017 WL 4354998 (N.D. Cal. Oct. 2, 2017) .................... 9, 10, 11

*McGill v. Citibank, N.A.*,
   2 Cal. 5th 945 (2017) ............................................................... 9, 10, 11, 12

*McKee v. Audible, Inc.*,
   No. 17 Civ. 1941 (GW), 2017 WL 7388530 (C.D. Cal. Oct. 26, 2017) ........................... 12

*Memorandum of Points and Authorities in*              *Doe v. Uber Technologies, Inc.*
*Opposition to Defendant Uber Technologies, Inc.'s*    *Case No.: 4:17-cv-06571(YGR)*
*Motion to Compel Arbitration*

*Metter v. Uber Techs., Inc.*,
  No. 16 Civ. 6652 (RS), 2017 WL 1374579 (N.D. Cal. Apr. 17, 2017)...................... 13, 14, 15

*Meyer v. Uber Techs., Inc.*,
  868 F.3d 66 (2d Cir. 2017)..................................................................................... 23

*Mohamed v. Uber Techs., Inc.*,
  109 F. Supp. 3d 1185 (N.D. Cal. 2015) ................................................................. 19

*Mohamed v. Uber Techs., Inc.*,
  836 F.3d 1102 (9th Cir. 2016) .................................................................................. 8

*Nghiem v. Dick's Sporting Goods, Inc.*,
  No. 16 Civ. 97 (CJC), 2016 WL 9131962 (C.D. Cal. July 5, 2016)........................ 15

*Nguyen v. Barnes & Noble, Inc.*,
  763 F.3d 1171 (9th Cir. 2014) ..................................................................... 13, 14, 15, 16

*Norcia v. Samsung Telecommc'ns Am., LLC*,
  No. 14 Civ. 582 (JD), 2014 WL 4652332 (N.D. Cal. Sept. 18, 2014) .................... 14

*Olney v. Jobs.com, Inc.*,
  No. 12 Civ. 1724 (LJO)(SKO), 2014 WL 4660851 (E.D. Cal. Sept. 17, 2014).............. 14, 15

*Opals on Ice Lingerie v. Bodylines Inc.*,
  320 F.3d 362 (2d Cir. 2003)..................................................................................... 21

*Parada v. Superior Court*,
  176 Cal. App. 4th 1554 (Cal. Ct. App. 2009) ................................................... 20, 21

*Rent-A-Center West, Inc. v. Jackson*,
  561 U.S. 63 (2010)..................................................................................................... 7

*Roberts v. AT&T Mobility LLC*,
  No. 15 Civ. 03418 (EMC), 2018 WL 1317346 (N.D. Cal. Mar. 14, 2018).................... 11, 12

*Rodman v. Safeway Inc.*,
  125 F. Supp. 3d 922 (N.D. Cal. 2015) ................................................................... 15

*Rodman v. Safeway Inc.*,
  No. 11 Civ. 3003 (JST), 2015 WL 604985 (N.D. Cal. Feb. 12, 2015)................... 18

*Sakkab v. Luxottica Retail N. Am., Inc.*,
  803 F.3d 425 (9th Cir. 2015) ................................................................................. 11

*Memorandum of Points and Authorities in*            *Doe v. Uber Technologies, Inc.*
*Opposition to Defendant Uber Technologies, Inc.'s*   *Case No.: 4:17-cv-06571(YGR)*
*Motion to Compel Arbitration*

*Samaniego v. Empire Today, LLC*,
205 Cal. App. 4th 1138 (Cal. Ct. App. 2012) ........................................................ 19

*Sandquist v. Lebo Automotive, Inc.*,
1 Cal. 5th 233 (2016) .................................................................................................. 8

*Shroyer v. New Cingular Wireless Servs., Inc.*,
498 F.3d 976 (9th Cir. 2007) ................................................................................... 21

*Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*,
559 U.S. 662 (2010) ..................................................................................................... 7

*Swift v. Zynga Game Network, Inc.*,
805 F. Supp. 2d 904 (N.D. Cal. 2011) .................................................................. 13

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*,
925 F.2d 1136 ................................................................................................... 12, 14

*United Parcel Serv. v. Lexington Ins. Grp.*,
No. 12 Civ. 7961 (SAS), 2013 WL 1897777 (S.D.N.Y. May 7, 2013) ................... 9

## **Other Authorities**

9 U.S.C. § 2 ............................................................................................................... 21

Cal. Civ. Code § 2168 ................................................................................................. 4

Cal. Fam. Code § 6710 ............................................................................................. 24

*Memorandum of Points and Authorities in*
*Opposition to Defendant Uber Technologies, Inc.'s*
*Motion to Compel Arbitration*

*Doe v. Uber Technologies, Inc.*
*Case No.: 4:17-cv-06571(YGR)*

## <u>PRELIMINARY STATEMENT</u>

This lawsuit stems from collateral damage associated with Uber's success. By dramatically expanding the business model known as "ridesharing," Uber transformed the private, for hire, transportation industry. The grim reality is that Uber also enabled an epidemic of sexual violence against female passengers. The nine stories of Plaintiffs are a mere snapshot of the horrific violence experienced by countless other women, whose stories exhibit strikingly similar fact patterns and common themes about the who, what, where, and why of these incidents. Their stories help explain *how* Uber is responsible for what happened. Viewed collectively, it is easy to see the common patterns of behavior and *modus operandi* used by predatory Uber drivers to accomplish their sexual violence. In turn, it becomes clear that the sexual assaults committed by Uber drivers are a symptom of a larger pattern involving Uber's inadequate safety processes. This explains *why* Uber has worked so hard to bury data about these incidents and withhold critical information from consumers about the foreseeability of rape, while simultaneously spending millions on ad campaigns to convince the public that Uber is synonymous with "safe rides."

Plaintiffs assert two causes of action against Uber under California state laws, California's Business and Professional Code ("Section 17200") and the California Consumer Legal Remedies Act ("CLRA"), which essentially allow individuals to act as representatives of the public to request "injunctive relief" to prevent similar harm from recurring in the future. These claims seek relief for all consumers by asking the Court to force Uber to make systemic changes to its safety procedures. Such injunctive relief includes ordering Uber to permanently bar registered sex offenders and convicted rapists from driving for Uber in all states, interviewing drivers in person before allowing them to drive passengers (something the Justice

*Memorandum of Points and Authorities in*
*Opposition to Defendant Uber Technologies, Inc.'s*
*Motion to Compel Arbitration*

*Doe v. Uber Technologies, Inc.*
*Case No.: 4:17-cv-06571(YGR)*

Department categorizes as a "basic" safety measure), reviewing drivers' full criminal histories through fingerprinting and running prints through federal and state databases, installing tamper-proof video cameras and GPS tracking systems that alarm if they are disabled or malfunction, and preventing drivers from sharing their accounts with unscreened individuals.

On May 15, 2018, Uber rolled out a media campaign to message it would not force the assault and battery claims alleged by Jane Does 1-9 into private arbitration.  Uber failed to message that earlier that same day, it filed this motion to compel arbitration.  Fortunately, for the sake of future consumers, Uber's continued quest for secrecy will fail.  Section 17200 and the CLRA provide for public injunctive relief that, if granted, will accrue prospectively to the public and will affect Plaintiffs as individuals only incidentally, as they have already been harmed by Uber's wrongful conduct.  A plaintiff's right to seek an injunction pursuant to these laws cannot be waived through an arbitration agreement that prohibits such claims ***in any forum*** because doing so would compromise the public purposes these laws were intended to serve.  Yet, that is exactly what Uber's Terms of Service & Privacy Policy (the "Terms") attempt to do.  The plain language of the Terms restricts an arbitrator's ability to grant relief on a representative basis, and permits a plaintiff to proceed only on an individual basis and solely for that individual's harm.  Because Uber prohibits consumers from obtaining relief under these laws as a representative action, Uber's motion to force these claims to arbitration must be denied in its entirety.

Although the Court can and should deny Uber's motion on this basis alone, Plaintiffs offer other legal justifications to allow their claims to proceed here.  Uber's account set-up process shows that Plaintiffs, like many users, never actually assented to the Terms because Uber failed to provide adequate notice of their existence, let alone the Terms' contents.  Likewise, the Terms are unconscionable and should not be enforced.  Additionally, circumstances regarding

*Memorandum of Points and Authorities in*
*Opposition to Defendant Uber Technologies, Inc.'s*
*Motion to Compel Arbitration*

*Doe v. Uber Technologies, Inc.*
*Case No.: 4:17-cv-06571(YGR)*

1
2
3
4
5
6
7
8

individual Plaintiffs' account creation processes show that the Terms are not applicable to those Plaintiffs' claims.  For example, the rides during which Jane Does 6 and 9 were sexually assaulted were not ordered using their Uber accounts, thus the Terms have no bearing on their claims.  Uber lacks standing to claim that an arbitration provision is even at issue with respect to their claims.[1]  At a minimum, Jane Doe 6 and 9's claims pursuant to Section 17200 and the CLRA – claims for which they can seek injunctive relief on a representative basis – will move forward before this Court.

9
10
11
12

For years, Uber has known about the recurring level of sexual violence inflicted by Uber drivers on riders, but it placed profits over safety.  Public injunctive relief is necessary, and this Court, not an arbitrator, is the proper judicial body to rule on the relief requested.

13

I.   **NATURE OF PLAINTIFFS' CLAIMS AND THE PARTIES**

14

A.   **Plaintiffs' Causes of Action**

15
16
17
18
19
20
21
22
23
24
25

Jane Does 1-9, individually and on behalf of a proposed class of similarly-situated female passengers, brought three causes of action against Uber for violations of Section 17200, the CLRA and assault and battery under California common law.  *See* Am. Compl. ("AC"), Dkt. No. 40, ¶¶ 460-95.  The statutory claims allege that Uber has intentionally misrepresented, and continues to mispresent, that it provides, *inter alia*, "safe rides" to members of the public for a fee.  *Id.* ¶¶ 460-87.  Uber knows that it fails to screen and verify the backgrounds of prospective drivers and fails to monitor drivers in any meaningful way, resulting in grave threats to the safety and well-being of female passengers, including the crimes committed against Plaintiffs and other innocent victims.  *Id.* ¶¶ 255-300, 341-57.  Because Uber concealed its knowledge of the severity

26
27
28

---

[1]  As discussed below, Uber cannot have it both ways.  It cannot argue that the driver or user was "off app" and therefore Uber has no liability, yet at the same time claim that the Terms force the victim into arbitration.

*Memorandum of Points and Authorities in*                    *Doe v. Uber Technologies, Inc.*
*Opposition to Defendant Uber Technologies, Inc.'s*          *Case No.: 4:17-cv-06571(YGR)*
*Motion to Compel Arbitration*

and frequency of sexual assaults and rapes, and continues to do so, thousands of female riders, including Plaintiffs, were deceptively persuaded to use Uber without being informed of the foreseeable dangers of which Uber was fully aware. *Id.* ¶¶ 88-242, 341-57. Uber received ill-gotten profits and was unjustly enriched at the detriment of Plaintiffs and similarly-situated individuals. *Id.* ¶¶ 460-87. Plaintiffs seek public injunctive relief by requesting that the Court order Uber to implement various safety measures that, if implemented, would drastically reduce the harm to female passengers.[2] *Id.*

### B. Uber, Its Terms and the Arbitration Clause

#### 1. Uber: A Common Carrier

Uber calls itself a "transportation network company" and operates in the "ridesharing" industry. *Id.* ¶ 69. Uber connects drivers and the public through a downloadable smartphone application ("app") called "Uber" (the "Uber App"). *Id.* Consumers use the Uber App to request a ride, and Uber matches the user with an Uber driver who transports them. *Id.* Users pay Uber for the ride through the Uber App with a credit card, PayPal account or Google Wallet account, and Uber pays the driver a share of the fare collected and retains the remainder. *Id.* Uber's sole source of revenue is from charges to passengers for rides taken. *Id.* Because Uber is a transportation company that provides rides to the public for a fee, it is subject to the laws governing common carriers.[3] *Id.* ¶¶ 73-87. *See Doe v. Uber Techs., Inc.*, 184 F. Supp. 3d 774,

---

[2]   Plaintiffs also assert claims for civil assault and battery in which they allege that Uber is vicariously liable for the violent acts committed against them because the crimes occurred while their Uber drivers were acting as Uber's agents and carrying out Uber's agreement to transport Plaintiffs. *See* AC ¶¶ 488-95. Uber does not seek to compel arbitration of these claims, and they are therefore not addressed at length in the instant opposition. *See* Dkt. No. 52.

[3]   For purposes of tort claims, California law defines "common carrier" as "[e]veryone who offers to the public to carry persons, property, or messages, excepting only telegraphic messages." Cal. Civ. Code § 2168.

*Memorandum of Points and Authorities in*
*Opposition to Defendant Uber Technologies, Inc.'s*
*Motion to Compel Arbitration*

*Doe v. Uber Technologies, Inc.*
*Case No.: 4:17-cv-06571(YGR)*

787 (N.D. Cal. 2016) ("Plaintiffs have alleged sufficient facts to plausibly claim that Uber is a common carrier."). When Uber drivers carry out a contract of transportation, Uber is under a non-delegable duty to transport passengers safely. *See* AC ¶ 83. Uber drivers, whether labeled as "agents" or "employees," also are held to this higher duty of care. *Id.* ¶ 84.

Uber's model relies on an enormous pool of drivers to provide rides to consumers quickly and efficiently. *Id.* ¶ 70. Uber amassed its army of drivers by hiring thousands of non-professional drivers through an online application process that was developed with the goal of getting drivers on-boarded as fast as possible. *Id.* Uber eliminated anything in the process that would interfere with the speed of placing Uber drivers on the road. Requiring prospective drivers to appear in person for an interview would cause delay. Requiring fingerprinting that takes weeks to run through government databases would cause delay. Requiring commercial licenses, and the associated insurance, would provide economic hurdles to prospective drivers and cause severe delay. In sum, Uber rejected the hiring processes used by regulated taxi and private transportation services because regulations cause delay, and delay harms profits. *Id.* ¶ 71.

Many of these time saving protocols, however, severely compromised Uber's ability to adhere to the safety regulations that govern regulated taxi and for hire drivers. *Id.* ¶¶ 342-48. Indeed, assaults of the nature alleged in this action are exactly why passengers would expect taxi companies to perform background checks of their drivers and monitor their work. *See Doe*, 184 F. Supp. 3d at 785. At the highest levels, Uber decided to forego best practices about passenger safety in order to put as many Uber vehicles on the road in the shortest amount of time possible.

### 2.   Uber's Terms of Service

Plaintiffs downloaded the Uber App and created Uber accounts at various times from December 2012 through October 2016. *See* AC ¶¶ 88-242. When registering for an Uber

*Memorandum of Points and Authorities in*
*Opposition to Defendant Uber Technologies, Inc.'s*
*Motion to Compel Arbitration*

*Doe v. Uber Technologies, Inc.*
*Case No.: 4:17-cv-06571(YGR)*

account through the Uber App, users, including Plaintiffs, are required to input certain information across the course of several screens, including their name, mobile phone number and payment information. *Id.* ¶¶ 400-12. Relevant here, the screen on which users are prompted to enter their credit card information states, "By creating an Uber account, you agree to the Terms."[4] *Id.* ¶¶ 405-12. The Terms contain an arbitration clause (the "Arbitration Clause") that states in relevant part:[5]

> You agree that any dispute, claim or controversy arising out of or relating to these Terms or the breach, termination, enforcement, interpretation or validity thereof or the use of the Services (collectively, "Disputes") will be settled by binding arbitration between you and Uber. . . .  you and Uber are each waiving the right to a trial by jury or to participate as a plaintiff or class in any purported class action or representative proceeding. Further, …the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of any class or representative proceeding.

*See* Declaration of Dylan Tonti ("Tonti Decl."), Dkt. No. 51-1, Ex. A. However, Plaintiffs never actually assented to the Terms because Uber failed to provide adequate notice of its existence, let alone its contents. By way of example only:

- There is no information about the Terms on the screen on which the user enters credit card information, and there is no prompt suggesting that the user read the Terms. *See* AC ¶¶ 406-07. In fact, the Terms' text is in a lighter, lower contrast font as compared to other helper text, which further obscures the significance of the Terms. *Id.* ¶ 408.

- To advance past the screen on which the credit card information is entered, there is no requirement that the user review the Terms. *Id.* ¶ 411. Rather, the button at the top of the screen merely says "DONE" and there is no statement indicating that clicking "DONE" signifies assent to any Terms. *Id.* at ¶¶ 412-

---

[4]  The various Terms in effect, as well as the applicable Arbitration Clauses contained therein, when Plaintiffs created their Uber accounts are largely similar in all substantial respects. *See* Tonti Decl., Exs. A-G, I.

[5]  Defendant concedes that the Terms in effect when Jane Doe 5 created an Uber account did not contain an Arbitration Clause. *See* Defs.' Mem. at 15; Declaration of Jeanne M. Christensen ("Christensen Decl."), Ex. 5.

*Memorandum of Points and Authorities in*                    *Doe v. Uber Technologies, Inc.*
*Opposition to Defendant Uber Technologies, Inc.'s*          *Case No.: 4:17-cv-06571(YGR)*
*Motion to Compel Arbitration*

16. Furthermore, there is no indication that selecting "DONE" is the final step to account creation. *Id.*

- The full Terms are never provided to a prospective user at any time during the account creation process, nor are the Terms mailed or emailed to an user after an account has been created. *Id.* ¶¶ 422-23.

- Uber does not ***require*** that users open a link to read, review, acknowledge or even view the Terms. *Id.* ¶¶ 417-18.

- Users are not required to affirmatively assent to the Terms such as by checking a box "I agree" or otherwise assent to the Terms. *Id.* ¶¶ 419-21.

## II.    **PROCEDURAL BACKGROUND**

On November 14, 2017, Plaintiffs Jane Doe 1 and 2 commenced this action against Uber, alleging causes of action arising under Section 17200, the CLRA and California common law for assault and battery. *See* Dkt. No. 1. On March 15, 2018, Plaintiffs filed an Amended Complaint in which seven additional Plaintiffs assert identical causes of action against Uber. *See* Dkt. No. 40. On May 15, 2018, Defendant filed an Answer to Plaintiffs' claims arising under California common law for assault and battery and filed the instant motion to compel arbitration with respect to Plaintiffs' claims arising under Section 17200 and the CLRA. *See* Dkt. Nos. 51-52. According to Uber, Plaintiffs' "claims should be heard in the arbitral forum Plaintiffs agreed to." *See* Defendant's Memorandum in Support of Motion to Compel, Dkt. No. 51 ("Def.'s Mem."), at 2.

## **LEGAL ARGUMENT**

## I.    **MOTION TO COMPEL ARBITRATION LEGAL STANDARD**

Although the Federal Arbitration Act ("FAA") reflects a liberal policy favoring arbitration, "it is a fundamental principal that arbitration is a matter of contract." *Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010); *Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 681 (2010) ("[A]rbitration is a matter of consent, not coercion"). In deciding a motion

*Memorandum of Points and Authorities in*                    *Doe v. Uber Technologies, Inc.*
*Opposition to Defendant Uber Technologies, Inc.'s*          *Case No.: 4:17-cv-06571(YGR)*
*Motion to Compel Arbitration*

to compel arbitration, a court is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 303 (2010) (presumption favoring arbitration only applies where an "express agreement to arbitrate [that] was validly formed"). Where a party contests the existence of an arbitration agreement, "the presumption in favor of arbitrability does not apply." *Goldman Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014). A party opposing arbitration must receive the "benefit of all reasonable doubts and inferences." *Alarcon v. Vital Recovery Servs., Inc.*, 706 F. App'x 394, 394 (9th Cir. 2017).

## II.   <u>THIS COURT CAN AND SHOULD DECIDE THE ISSUE OF ARBITRABILITY</u>

Under the FAA, the general presumption is that the issue of arbitrability should be resolved by the courts. *See Mohamed v. Uber Techs., Inc.*, 836 F.3d 1102, 1112 (9th Cir. 2016) ("[T]here is a presumption that courts will decide which issues are arbitrable; the federal policy in favor of arbitration does not extend to deciding questions of arbitrability."); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("presumption that the issue of arbitrability . . . should be resolved by the courts"); *Hong v. CJ CGV Am. Holdings, Inc.*, 222 Cal. App. 4th 240, 261 (Cal. Ct. App. 2013) (arbitrability was properly considered by the court in the first instance). Courts do not "assume that the parties agreed to arbitrate arbitrability unless there is '***clear and unmistakable***' evidence that they did so." *First Options of Chicago, Inc.*, 514 U.S. at 944 (emphasis added). Further, "absent the parties' commitment of the arbitrability decision to an arbitrator, disagreements over whether a particular dispute is within the scope of an arbitration provision are ordinarily the responsibility of a court." *Sandquist v. Lebo Automotive, Inc.*, 1 Cal. 5th 233, 249 (2016).

Page **8** of **26**

*Memorandum of Points and Authorities in Opposition to Defendant Uber Technologies, Inc.'s Motion to Compel Arbitration*

*Doe v. Uber Technologies, Inc. Case No.: 4:17-cv-06571(YGR)*

Where, as here, an arbitration clause does not encompass the claims at issue in an action, the court should decline to submit the threshold issue of arbitrability to an arbitrator in the first instance.  *See Greene v. Subcontracting Concepts, L.L.C.*, No. 13 Civ. 1500 (AJN), 2014 WL 1087999, at *3 (S.D.N.Y. Mar. 19, 2014) ("[D]oubts as to *who* determines arbitrability—that is, the arbitrability of the question of arbitrability' are presumptively resolved in favor of resolution by courts."); *see also United Parcel Serv. v. Lexington Ins. Grp.*, No. 12 Civ. 7961 (SAS), 2013 WL 1897777, at *2 (S.D.N.Y. May 7, 2013) (court had the authority to determine arbitrability despite the incorporation by reference of the AAA's rules).  Because the claims in this action are plainly not subject to the Arbitration Clause, it cannot be said that the parties "unmistakably" agreed to submit anything relating to this dispute to arbitration, and this Court should decide the issue of arbitrability.

## III.    PLAINTIFFS' CLAIMS ARE NOT SUBJECT TO ARBITRATION

### A.    The Terms Prohibit Injunctive Relief On A Representative  Basis

Even if Uber can demonstrate that Jane Does 1-9 assented to a valid arbitration agreement with Uber, which it cannot, Uber's motion to compel to arbitration warrants denial because the plain language of the Arbitration Clause precludes Plaintiffs from seeking public injunctive relief **in any forum**.  This is impermissible under California case law.  A contract precluding public injunctive relief in any forum runs afoul of the generally applicable contract defense that "a law established for a public reason cannot be contravened by a private agreement." *Blair v. Rent-A-Center, Inc.*, No. 17 Civ. 02335 (WHA), 2017 WL 4805577, at *4 (N.D. Cal. Oct. 25, 2017) (quoting *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 962 (2017)).

Numerous judges in this District have relied on *McGill* as a basis to deny a motion to compel arbitration.  *See McArdle v. AT&T Mobility LLC*, No. 09 Civ. 01117 (CW), 2017 WL

*Memorandum of Points and Authorities in*
*Opposition to Defendant Uber Technologies, Inc.'s*
*Motion to Compel Arbitration*

*Doe v. Uber Technologies, Inc.*
*Case No.: 4:17-cv-06571(YGR)*

4354998, at *3 (N.D. Cal. Oct. 2, 2017) (granting the plaintiff's motion for reconsideration of order compelling arbitration and observing, "*McGill*'s holding that predispute waivers of public injunctive relief are contrary to California public policy is binding on this Court"); *see also Tillage v. Comcast Corp.*, No. 17 Civ. 6477 (VC), Docket No. 37, (N.D. Cal. Feb. 15, 2018) (denying motion to compel arbitration where the plaintiffs alleged that Comcast falsely advertises and promotes its cable television service packages for much lower prices than it actually charges in order to induce consumers to subscribe its services); *Blair*, 2017 WL 4805577 at *4 (denying motion to compel arbitration of claims arising under Section 17200 and the CLRA where the plaintiffs alleged that Rent-A-Center's rent-to-own agreements set prices in excess of the maximum installment payment rates allowable under California law).

The claims Plaintiffs assert, and the relief they seek in this action pursuant to Section 17200 and the CLRA, are precluded by the plain language of the Terms that Uber says governs. The Terms in effect on November 21, 2016, which Uber submits in support of its motion to compel to arbitration, contain the following language:

> You acknowledge and agree that you and Uber are each waiving the right to a trial by jury or to participate as a plaintiff or class in any purported class action or **representative proceeding**. Further, unless you and Uber otherwise agree in writing, an arbitrator may not consolidate more than one person's claims and may not otherwise preside over any form of any class or **representative proceeding**.

*See* Tonti Decl., Ex. I (the "November 2016 Terms"), § 6 (emphasis added). The November 2016 Terms further state:

> The arbitrator's award [sic] damages must be consistent with the terms of the "Limitation of Liability" section above as to the types and the amounts of damages for which a party may be held liable. The arbitrator may award declaratory or injunctive relief **only in favor of the claimant** and only to the extent necessary to provide relief warranted by the **claimant's individual claim**.

*Id.* In *Blair*, the court was presented with essentially the same language as in Uber's Terms and held that the Section 17200 and CLRA claims must proceed in court, not arbitration. *See* 2017

*Memorandum of Points and Authorities in Opposition to Defendant Uber Technologies, Inc.'s Motion to Compel Arbitration*

*Doe v. Uber Technologies, Inc. Case No.: 4:17-cv-06571(YGR)*

WL 4805577 at *4.  The relevant language in *Blair* included that: (i) the arbitration "shall be conducted on an individual basis;" (ii) the arbitrator was prohibited from "award[ing] relief that would affect [company] account holders other than [the customer];" and (iii) there was "no right or authority for any dispute to be brought, heard, or arbitrated as a class, . . . private attorney general, or representative action." *Id.* at *5.  Because the language at issue provided that, in arbitration, the "only form of relief a complainant is permitted to pursue is individual relief (i.e. relief on behalf of oneself)," the motion to compel was denied. *Id.*  Relying on *McGill*, the court in *Blair* held that a contrary result would "seriously compromise the public purposes [the laws] were intended to serve." *Id.* at *2 (quoting *McGill*, 2 Cal. 5th at 962).[6]

*McGill* compels the same result here.  Even if Uber can show that Jane Does 1-9 were bound by the Terms, which Plaintiffs dispute, the Arbitration Clause limits relief to an individual basis only, effectively prohibiting Plaintiffs from pursuing representative claims under the CLRA and Section 17200.  Recently, in *Roberts v. AT&T Mobility LLC*, No. 15 Civ. 03418 (EMC), 2018 WL 1317346 (N.D. Cal. Mar. 14, 2018), the court followed the holding in *McGill* to determine that an agreement that limited relief in arbitration to individual relief was not binding with respect to claims involving public injunctive relief. *Id.* at *4.  The court in *Roberts* agreed with *McArdle*'s pre-emption analysis, and held that the Ninth Circuit's reasoning in *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425 (9th Cir. 2015) applied because:

> If the California state law rule . . . prohibiting waiver of representative PAGA claims (in any forum) does not interfere with the fundamental attributes of arbitration, then it is difficult to see how the California state law rule (*McGill*) prohibiting waiver of public injunctive relief (in any forum) could.

---

[6]  Notably, the court in *McGill* did not hold that parties cannot agree to compel public injunctive claims to arbitration.  Instead, it held that parties cannot prohibit litigating a public injunctive claim, such as provided for in Section 17200 and the CLRA in any forum, including arbitration.  For this reason, the rule in *McGill* is not preempted by the FAA. *See McGill*, 2 Cal. 5th at 956; *Blair*, 2017 WL 4805577 at * 4-5.

*Memorandum of Points and Authorities in*                                    *Doe v. Uber Technologies, Inc.*
*Opposition to Defendant Uber Technologies, Inc.'s*              *Case No.: 4:17-cv-06571(YGR)*
*Motion to Compel Arbitration*

1

2

*Id.* at \*6.  Because the language in Uber's Terms is contrary to California law under *McGill*, Uber's motion to compel fails in its entirety and Plaintiffs must proceed before this Court.

3

4

5

6

7

8

9

10

11

12

13

14

15

Allowing the claims of the nine Plaintiffs to proceed as one action will prevent unnecessary and duplicative litigation that would be inefficient and burden already limited judicial resources.  Here, the claims the Plaintiffs assert under Section 17200 and the CLRA will involve many of the same facts, including Uber's policies, practices and procedures and their ineffective measures for screening drivers.  To require Plaintiffs to proceed individually would result in unnecessary duplication, substantial litigation costs and inefficiency of judicial resources.  Allowing Plaintiffs to proceed together serves to level the playing field against such a powerful and deep-pocketed company as Uber.  Fully aware of the costs of litigation and of the fact that Plaintiffs' collective voice yields greater power against Uber, Defendant seeks to divide these individuals' claims with the hope that severance will weaken and undermine their likelihood of success.

16

17

18

19

20

21

22

23

24

25

26

27

**B.**      **Plaintiffs Did Not Assent to Terms and the Arbitration Clause**

Plaintiffs did not assent to the Arbitration Clause because they did not have actual or constructive notice.  To evaluate the validity of an arbitration agreement, "federal courts should apply ordinary state-law principles that govern the formation of contracts."  *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003).  It is well established that, "[b]efore a party to a lawsuit can be ordered to arbitrate . . . there should be an express, unequivocal agreement to that effect."  *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991; *see also McKee v. Audible, Inc.*, No. 17 Civ. 1941 (GW), 2017 WL 7388530, at \*9 (C.D. Cal. Oct. 26, 2017) (deciding that plaintiff "did not manifest assent to the arbitration provision" in the terms).  Furthermore, "[i]f there is no evidence establishing a manifestation of assent to the

28

*Memorandum of Points and Authorities in*          *Doe v. Uber Technologies, Inc.*
*Opposition to Defendant Uber Technologies, Inc.'s*          *Case No.: 4:17-cv-06571(YGR)*
*Motion to Compel Arbitration*

'same thing' by both parties, then there is no mutual consent to contract and no contract formation." *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 208 (Cal. Ct. App. 2006).

While the Internet age has changed the factual circumstances in which courts must apply basic contract principles, the requirement of "mutual manifestation of assent, whether by written or spoken word or by conduct, [remains] the touchstone of contract." *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). Relevant here, "[c]ontracts formed on the Internet come primarily in two flavors: 'clickwrap' (or 'click-through') agreements, in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use; and 'browsewrap' agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen." *Id.* at 1175-76. A clickwrap agreement provides the user "with access to the terms of service and require[s] a user to affirmatively accept the terms." *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011). In contrast, **"a browsewrap agreement does not require the user to manifest assent to the terms and conditions expressly."** *Nguyen*, 763 F.3d at 1175-76 (emphasis added). Because Plaintiffs were neither presented with the Terms upon registering for an Uber account nor required to affirmatively agree to the Terms as part of the account set-up process, Uber's Terms are a browsewrap agreement. *See Friedman v. Guthy-Renker LLC*, No. 14 Civ. 6009 (ODW), 2015 WL 857800, at *5 (C.D. Cal. Feb. 27, 2015) (holding that an agreement was a browsewrap agreement "because website visitors are not presented with a list of terms and conditions when completing a purchase").

The Ninth Circuit has observed that "the determination of the validity of the browsewrap contract depends on whether the user has actual or constructive knowledge of a website's terms and conditions." *Nguyen*, 763 F.3d at 1176; *see also Metter v. Uber Techs., Inc.*, No. 16 Civ.

*Memorandum of Points and Authorities in*
*Opposition to Defendant Uber Technologies, Inc.'s*
*Motion to Compel Arbitration*

*Doe v. Uber Technologies, Inc.*
*Case No.: 4:17-cv-06571(YGR)*

6652 (RS), 2017 WL 1374579, at *2 (N.D. Cal. Apr. 17, 2017) ("[M]utual assent ordinarily . . . turns on whether the consumer had reasonable notice of a merchant's terms of service agreement"); *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 395 (E.D.N.Y. 2015) ("For an internet browsewrap contract to be binding, consumers must have reasonable notice of a company's 'terms of use' and exhibit 'unambiguous assent' to those terms."). Courts should only conclude that the parties agreed to enter an agreement "when there is no genuine issue of fact concerning the formation of the agreement." *Three Valleys Mun. Water Dist.*, 925 F.2d at 1141. Where questions exist concerning formation of an agreement, "the party opposing arbitration shall receive the benefit of all reasonable doubt and inferences." *Anderson v. Credit One Bank, Nat'l Ass'n*, No. 16 Civ. 3125 (MMA), 2017 WL 2258064, at *3 (S.D. Cal. May 23, 2017).

## 1.   Plaintiffs Did Not Have Actual Notice Of The Arbitration Clause

Plaintiffs allege, and affirm in their declarations, that when they registered for Uber accounts, they do not recall seeing a "Terms of Service & Privacy Policy" hyperlink at any point during the registration process, and therefore never clicked on a hyperlink containing the Terms. *See* AC ¶¶ 400-23; Christensen Decl., Exs. 1-9. Plaintiffs further allege and affirm that they were unaware of the Arbitration Clause contained within the Terms, that they were not required to read the Terms, and that they never indicated that they had reviewed or in any way assented to the Terms. *Id.* As Plaintiffs were unaware of the existence of the Terms, and because they never actually clicked the Terms hyperlink during the account set-up process, they did not have actual notice of the Terms. *See Norcia v. Samsung Telecommc'ns Am., LLC*, No. 14 Civ. 582 (JD), 2014 WL 4652332, at *5 (N.D. Cal. Sept. 18, 2014) (holding no actual notice where the plaintiff "did not see, let alone read, the warranty booklet containing the arbitration provision"); *Olney v.*

*Memorandum of Points and Authorities in*
*Opposition to Defendant Uber Technologies, Inc.'s*
*Motion to Compel Arbitration*

*Doe v. Uber Technologies, Inc.*
*Case No.: 4:17-cv-06571(YGR)*

1   *Jobs.com, Inc.*, No. 12 Civ. 1724 (LJO)(SKO), 2014 WL 4660851, at *5-6 (E.D. Cal. Sept. 17,

2   2014) (denying motion where the plaintiff "never clicked the hyperlink nor read" the terms).

3                2.     <u>Plaintiffs Did Not Have Constructive Notice Of The Arbitration Clause</u>

4           Where there is not actual notice, "the validity of a browsewrap agreement turns on

5   whether the Web site puts a reasonably prudent user on inquiry notice of the terms of the

6   contract." *Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 863 (Cal. Ct. App. 2016).

7   Whether users were on inquiry notice "is a highly fact-specific inquiry that looks to the

8   conspicuousness and placement of the 'Terms of Use' hyperlink, other notices given to users of

9   the terms of use, and the website's general design." *Rodman v. Safeway Inc.*, 125 F. Supp. 3d

10  922, 945 (N.D. Cal. 2015).  To that end, "[w]hen a hyperlink to a website's terms is buried at the

11  bottom of the page or tucked away in obscure corners of the website, users cannot be said to be

12  on constructive notice." *Nghiem v. Dick's Sporting Goods, Inc.*, No. 16 Civ. 97 (CJC), 2016 WL

13  9131962, at *3 (C.D. Cal. July 5, 2016); *see also Metter*, 2017 WL 1374579 at *2 (holding the

14  user did not have notice of the terms where they were obscured by a pop up screen).

15          Plaintiffs did not manifest assent to the Terms because the Uber App does not put a

16  reasonably prudent user on inquiry notice of the Terms.  Although a user must enter information

17  on three screens before creating an Uber account, there is no hyperlink allowing the user to view

18  the Terms until the third page of the account creation process.  *See* Declaration of Paul Holden,

19  Dkt. No. 51-2 ("Holden Decl."), Exs. A-L.  Even then, Uber does not require users to click the

20  hyperlink, read the Terms, or affirm that he or she has read or reviewed the Terms.  *Id.*  Plaintiffs

21  were not on inquiry notice of the Terms, and could not have manifested assent thereto.  *See*

22  *Nguyen*, 763 F.3d at 1178 (holding a hyperlink was insufficient to put users on inquiry notice

23  even where it was "in the bottom left-hand corner of every page on the [defendant's] website"

*Memorandum of Points and Authorities in*
*Opposition to Defendant Uber Technologies, Inc.'s*
*Motion to Compel Arbitration*

*Doe v. Uber Technologies, Inc.*
*Case No.: 4:17-cv-06571(YGR)*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

and was in "close proximity to the buttons a user must click on to complete an online purchase"); *Berkson*, 97 F. Supp. 3d at 404 (holding no constructive notice of terms where the "design and content of the website, including the homepage, did not make the 'terms of use' readily and obviously available"); *Friedman*, 2015 WL 857800 at *5  (a hyperlink that was "more-or-less buried at the bottom of the screen" was insufficient to put the user on inquiry notice of terms); *Herman v. Seaworld Parks & Entm't, Inc.*, No. 14 Civ. 3028, 2016 WL 7447555, at *6 (M.D. Fla. Aug. 26, 2016) (holding that the "location of the hyperlink alone [was] insufficient to place reasonably prudent website users on inquiry notice of the Website Terms").

### 3.   Uber Could Have Designed Its App To Provide Notice Of The Terms

The Ninth Circuit has held that "the onus must be on [smartphone App owners/operators] to put users on notice of the terms to which they wish to bind consumers."  *Nguyen*, 763 F.3d at 1179.  In *Nguyen*, the court reasoned that "consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound."  *Id.*  Here, Uber could have taken many steps to ensure that users had notice of the Terms, but failed to do so in hopes of ensuring users quickly created accounts without fully appreciating the rights they were giving up.  Uber could have made the hyperlink to the Terms available on each page of the account creation process, but only chose to make it available on the last page.  Likewise, Uber could have required that the user actually open the hyperlink and affirmatively acknowledge that he or she had read and agreed to the Terms.

Uber could have designed the app to make it clear at which point the user was actually "creating an Uber account," as Uber now argues demonstrates the user intended to be bound by the Terms.  Although the third page states that "by creating an Uber account" the user agrees to the Terms, after entering payment information, the user is required to click a button stating either

*Memorandum of Points and Authorities in*
*Opposition to Defendant Uber Technologies, Inc.'s*
*Motion to Compel Arbitration*

*Doe v. Uber Technologies, Inc.*
*Case No.: 4:17-cv-06571(YGR)*

"Done" or "Register." *See, e.g.*, Holden Decl., Ex. H. Accordingly, even if the Terms were plainly visible, a user may not be aware that clicking "Done" or "Register" would demonstrate agreement to be bound by the Terms. *See Friedman*, 2015 WL 857800 at \*5 (wording on a registration button may be relevant in determining whether the user had constructive knowledge of the terms). While these are only a few ways in which Uber could have ensured that users read and assented to the Terms, they demonstrate that the Terms are not presented in a manner such that the user is placed on constructive notice.

In sum, Uber took a legal gamble when it decided to use a browsewrap agreement rather than other available and accepted methods to obtain assent to the Terms by users. As a "technology leader," implementing steps to obtain assent to the Terms was feasible. Like everything else, Uber wants to bend laws in place when doing so benefits Uber. Uber wants consumers to download the Uber App and complete the account set-up process as fast as technology makes possible. Uber knowingly failed to obtain proper assent from users to facilitate its speedy set-up process. To this day, Uber fails to require users to click "I agree" in connection with the Terms.

4.  Users Were Not On Notice Of Uber's Revised Terms

Uber argues that, to the extent Plaintiffs either did not read the Terms or were not initially presented with an Arbitration Clause when registering for an account, "in November 2016, Uber emailed notice to each of the plaintiffs . . . indicating that it was updating its Rider Terms." Defs.' Mem. at 15. According to Uber, the November 2016 email stated, "[i]f you use our app or other services on or after [November 21, 2016], you're confirming you've read and agree to the

*Memorandum of Points and Authorities in*            *Doe v. Uber Technologies, Inc.*
*Opposition to Defendant Uber Technologies, Inc.'s*   *Case No.: 4:17-cv-06571(YGR)*
*Motion to Compel Arbitration*

updated Terms."[7]   Tonti Decl., Ex. H.   Although Uber's Dylan Tonti affirms that "all nine Jane Does were sent the email," he does not affirm, nor could he, that Uber used Plaintiffs' most current emails or that Plaintiffs actually received, opened or read Uber's November 2016 email. *Id.* ¶ 21.   Likewise, as with the Terms in effect when Plaintiffs created their Uber accounts, users were in no way required to affirm that they had received the November 2016 email, read the Terms linked to in a hyperlink contained therein, or read the revised Terms.   *Id.*; *see also* Christensen Decl., Ex. 5.   Because Uber failed to provide adequate notice of the revised Terms in its November 2016 email, using the Uber App after November 21, 2016 does not demonstrate an intent to be bound by the Terms.   *See Rodman v. Safeway Inc.*, No. 11 Civ. 3003 (JST), 2015 WL 604985, at *11 (N.D. Cal. Feb. 12, 2015) (changes were not effective where the defendant failed to show that "assent to the revised [terms] [could] be inferred from . . . continued use").

### C.   The Arbitration Clause Is Unconscionable

Arbitration provisions that are "unfairly one-sided" are substantively unconscionable. *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1071 (2003).   Substantive unconscionability arises when a provision is so "overly harsh or one-sided" that it falls outside the "reasonable expectations" of the non-drafting party.   *Gutierrez v. Autowest, Inc.*, 114 Cal. App. 4th 77, 88 (Cal. Ct. App. 2003).   Uber's Terms are unconscionable because:   (1) they provide Uber with the unilateral right to revise and/or assign the agreement; (2) they exclude from arbitration claims that Uber is most likely to bring; and (3) they severely restrict the remedies that users may seek. Courts find unconscionability where a drafting party retains the unilateral right to revise an agreement.   *See Macias v. Excel Bldg. Servs. LLC*, 767 F. Supp. 2d 1002, 1012 (N.D. Cal. 2011). Uber's Terms provide that "Uber may amend the Terms from time to time," but provides no

---

[7]   As Jane Doe 1 and Jane Doe 8 both last used the Uber App on October 15, 2016, the November 2016 revised Terms do not apply to their claims.

*Memorandum of Points and Authorities in*                              *Doe v. Uber Technologies, Inc.*
*Opposition to Defendant Uber Technologies, Inc.'s*          *Case No.: 4:17-cv-06571(YGR)*
*Motion to Compel Arbitration*

similar right to the user to amend or modify the Terms.  *See, e.g.*, November 2016 Terms, § 1.
Uber claims that its Terms are proper despite this unilateral right because, "although Uber
reserved the right to alter the Terms, Riders have the right to 'reject any such change by
providing' Uber 'written notice.'"  Def.'s Mem. at 21.  This purported avenue of change is
meaningless, however, because the provision further states, "By rejecting changes, you are
agreeing that you will arbitrate any dispute between you and Uber ***in accordance with the
provisions of this Arbitration Agreement as of the date you first agreed to the Terms***."  *Id.* § 2
(emphasis added).  Accordingly, users have no true means of rejecting changes to the Arbitration
Clause, and the provisions are therefore unconscionable.

Substantive unconscionability also exists when an arbitration provision:  (i) provides for
the arbitration of claims most likely to be brought by the weaker party, but (ii) exempts the
claims most likely to be filed by the stronger party.  *See Samaniego v. Empire Today, LLC*, 205
Cal. App. 4th 1138, 1147-1148 (Cal. Ct. App. 2012).  Although the Arbitration Clause purports to
apply to "any dispute, claim or controversy arising out of or relating to the[] Terms," Uber carves
out an exception for "infringement, misappropriation or violation of a party's copyrights,
trademarks, trade secrets, patents or other intellectual property rights."  *See, e.g.*, November 2016
Terms, § 2.  Thus, Uber's Arbitration Clause actually *excludes* from arbitration the very types of
claims that Uber is most likely to bring – namely, claims involving intellectual property.  This
lack of mutuality renders Uber's Arbitration Clause substantively unconscionable.  *See Mohamed
v. Uber Techs., Inc.*, 109 F. Supp. 3d 1185, 1217 (N.D. Cal. 2015), *aff'd in part, rev'd in part and
remanded*, 836 F.3d 1102 (9th Cir. 2016), and *aff'd in part, rev'd in part and remanded*, 848
F.3d 1201 (9th Cir. 2016) (finding unconscionability where contract had carve-out provision for
Uber to litigate claims most valuable to it in court, *i.e.*, intellectual property claims).

*Memorandum of Points and Authorities in*
*Opposition to Defendant Uber Technologies, Inc.'s*
*Motion to Compel Arbitration*

*Doe v. Uber Technologies, Inc.*
*Case No.: 4:17-cv-06571(YGR)*

Uber's Terms and Arbitration Clause are also unconscionable because they limit the relief that users may seek against Uber. The "Limitation of Liability" provision provides:

- Uber "shall not be liable for indirect, incidental, special, exemplary, punitive, or consequential damages . . . resulting from any use of the services";

- Uber shall not be liable for "any damages, liability or losses arising out of . . . any transaction or relationship between you and any third party provider, even if Uber has been advised of the possibility of such damages";[8] and

- "[I]in no event shall Uber's total liability to you in connection with the services for all damages, losses and causes of action exceed [$500]."

*See, e.g.*, Tonti Decl., Ex. A, § 5. The Terms further provide that an arbitrator's award "must be consistent with the terms of the 'Limitation of Liability' . . . as to the types and amounts of damages for which a party may be held liable." *Id.* § 6. As Uber flagrantly limits a claimant's rights while not ceding any equivalent rights of its own, the provision is the very definition of an unconscionable pursuant to California law. *See, e.g.*, *Ellis v. McKinnon Broadcasting Co.*, 18 Cal. App. 4th 1796, 1803 (Cal. Ct. App. 1993).

Finally, the Terms place unduly restrictive conditions on claimants, providing that "the arbitrator will either be a retired judge or an attorney licensed to practice law in the state of California." *See, e.g.*, Tonti Decl., Ex. A, § 6. Thus, even if a claimant avails herself of an arbitration "in the county where you reside," the cost to pay for the travel and time for a retired judge or licensed attorney from California to fly to other cities renders such rights meaningless. For example, Ms. Doe 1 cannot afford to pay for an arbitrator to come from California to Miami, Florida to attend an arbitration hearing. *See Parada v. Superior Court*, 176 Cal. App. 4th 1554,

---

[8]  Regardless of whether Uber's classification of its drivers as "third-party providers" is legally correct, the Company has clearly taken the position that its drivers are not employees, as in this motion, Defendant describes its drivers as "third-party transportation providers." Defs.' Mem. at 4. This particular contractual clause strips customers of key rights and effectively strips Plaintiffs of the right to seek appropriate recourse in ***any*** forum.

*Memorandum of Points and Authorities in*     *Doe v. Uber Technologies, Inc.*
*Opposition to Defendant Uber Technologies, Inc.'s*     *Case No.: 4:17-cv-06571(YGR)*
*Motion to Compel Arbitration*

1586 (Cal. Ct. App. 2009) ("[R]equiring petitioners to arbitrate disputes before a panel of three arbitrators from JAMS and to prohibit consolidation or joinder of claims would have been so prohibitively expensive as to be unconscionable.").

**D.**     **Plaintiffs' Claims Do Not Fall Within The Scope Of The Arbitration Clause**

Even if there were a valid agreement to arbitrate, "the scope of arbitration is, of course, a matter of agreement between the parties." *Crowley Maritime Corp. v. Boston Old Colony Ins. Co.*, 158 Cal. App. 4th 1061, 1069 (Cal. Ct. App. 2008). A "party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration." *First Options of Chicago, Inc.*, 514 U.S. at 945. The FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms, but not more so." *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 989 (9th Cir. 2007); *see also* 9 U.S.C. § 2 (observing that agreements to arbitrate "shall be valid . . . and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"); *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 369 (2d Cir. 2003) (arbitration agreements are "as enforceable as other contracts, but not more so"). Uber's Arbitration Clause provides:

> You agree that any dispute, claim or controversy arising out of or relating to these Terms or the breach, termination, enforcement, interpretation or validity thereof or the use of the Services (collectively, "Disputes") will be settled by binding arbitration between you and Uber.

*See, e.g.*, Tonti Decl., Ex. A, § 6. The Terms further provide that "Services comprise mobile applications and related services (each, an 'Application'), which enable users to arrange and schedule transportation, logistics and/or delivery services and/or to purchase certain goods." *Id.* § 3. Plaintiffs' claims pursuant to Section 17200 and the CLRA do not actually arise out of Uber's provision of services or Plaintiffs' use thereof. While Plaintiffs claims for sexual assault and battery arguably arise out of their "use of" Uber's services, as they occurred during the

Page **21** of **26**

*Memorandum of Points and Authorities in*
*Opposition to Defendant Uber Technologies, Inc.'s*
*Motion to Compel Arbitration*                    *Doe v. Uber Technologies, Inc.*
*Case No.: 4:17-cv-06571(YGR)*

course of Plaintiffs' Uber rides, Plaintiffs' claims arising under Section 17200 and the CLRA seek safer rides on behalf of all passengers going forward, including injunctive relief to ensure that similar harm does not happen to other women. This relief does not relate to Uber's Terms or Plaintiffs' use of Uber's services.

Relying upon *Lainer v. Uber Techs., Inc.*, No. 15 Civ. 9925 (BRO), 2016 WL 7444925 (C.D. Cal. May 11, 2016), Defendant argues that "Plaintiffs' claims in this case fall unambiguously within the scope of the Arbitration Agreement." Defs.' Mem. at 18. In *Lainer*, the plaintiff alleged that she had received two unsolicited text messages inviting her to become a driver after she signed up for an Uber account. 2016 WL 7444925, at *1. The court held that the Terms "specifically permit Defendant to send Plaintiff text messages." *Id.* at *4. In contrast to *Lainer*, Plaintiffs' claims relate to Uber's failure to provide a safe ride and adequately screen its drivers, and there is certainly nothing in the Terms explicitly allowing Uber to provide an unsafe ride or employ ineffective screening measures. Uber's Terms contain broad limitations of liability and warranties, related to the "reliability, timeliness, quality, suitability, or availability" of the services – not the overall safety of the services. Moreover, while Uber seeks to limit its liability with respect to "the quality, suitability, safety or ability of third party providers," that issue is distinct from Uber's obligations and efforts to adequately screen such third-party providers.[9]

Uber cites to cases in which courts considered purportedly "virtually identical" terms and arbitration clauses. *See* Defs.' Mem. at 13-14. However, even accepting as true that the arbitration agreements in those actions are "virtually identical" to those at issue in this action, the claims asserted in those actions were either different than those that Plaintiffs assert herein or the

---

[9] Plaintiffs do not concede that Uber drivers are actually third-party providers, but rather accept such a classification as true merely for the sake of argument.

*Memorandum of Points and Authorities in
Opposition to Defendant Uber Technologies, Inc.'s
Motion to Compel Arbitration*

*Doe v. Uber Technologies, Inc.
Case No.: 4:17-cv-06571(YGR)*

court did not consider whether arbitration of such claims was permissible in the first instance. For example, in *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985 (N.D. Cal. 2017), the court did not consider whether the defendant could require the plaintiff to waive representative actions seeking public injunctive relief, and it does not appear that the plaintiff raised such an argument. Likewise, in *Meyer v. Uber Techs., Inc.*, the plaintiff alleged that Uber illegally fixed prices, but there is no indication that the plaintiff advanced, or the court considered, similar arguments as Plaintiffs advance herein.  868 F.3d 66, 71 (2d Cir. 2017).  Because the claims that Plaintiffs assert in this action are not subject to mandatory individual actions in arbitration, they are not within the scope of the Arbitration Clause, and Uber's motion to compel should be denied.

**E.     Additional Considerations Preclude Arbitration**

Additional facts demonstrate that arbitration of certain Plaintiffs' claims is inappropriate for individualized reasons.

### 1.     Jane Does 6's And Jane Doe 9's Claims Do Not Relate To Uber's Terms

Uber's Terms do not apply to the harm that Jane Does 6 and 9 suffered, and Uber lacks standing to hold them accountable pursuant to the Terms.  Uber is a "pay as you go" service, meaning that users do not pay a monthly or annual fee, nor are minimum charges levied regardless of use.  Users are charged only when the service is actually used or an individual transaction takes place.  The Terms, if enforceable, apply only when a passenger uses their own Uber App.  With respect to Ms. Doe 6, she did not order the ride during which she was assaulted using her own Uber account, but rather, a friend ordered the ride using his Uber account.  *See* AC ¶¶ 182-83.  The only contract for her ride was between Uber and her friend.  Likewise, the driver who picked Ms. Doe 9 up and sexually assaulted her admitted that, although he held himself out to be an Uber driver, he was not actually signed into the Uber App when he picked her up.  *Id.* ¶¶

*Memorandum of Points and Authorities in*
*Opposition to Defendant Uber Technologies, Inc.'s*
*Motion to Compel Arbitration*

*Doe v. Uber Technologies, Inc.*
*Case No.: 4:17-cv-06571(YGR)*

237-39.  As the harm that Ms. Does 6 and 9 suffered did not arise out of their purported agreement to Uber's Terms, the Terms do not control the adjudication of their claims.  *See Doe*, 184 F. Supp. 3d at 785 (Uber may be liable where the passenger presumes the driver's affiliation with Uber based on the driver's representations).

### 2.    Jane Doe 8 Was 16-Years Old When She Created An Account

Ms. Doe 8 was 16 when she downloaded the Uber app in or around January 2015.  *See* Declaration of Jane Doe 8, ¶ 2.  The Terms purportedly in effect at the time read, "You must be at least 18 years of age, or the age of legal majority in your jurisdiction (if different than 18), to obtain an Account."[10]  Tonti Decl., Ex. F.  Pursuant to Cal. Fam. Code § 6710, "a contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards." Cal. Fam. Code § 6710; *see also Berg v. Taylor*, 148 Cal. App. 4th 809, 818 (Cal. Ct. App. 2007) ("[O]ne who provides a minor with goods and services does so at her own risk.").  By joining this action as a Plaintiff within a reasonable time after reaching the age of majority, Ms. Doe 8 repudiated any purported agreement she had with Uber, and her claims are not subject to the Terms or Arbitration Clause.[11]  *See Lopez v. Kmart Corp.*, No. 15 Civ. 1089 (JSC), 2015 WL 2062606, at *5-6 (N.D. Cal. May 4, 2015).

### 3.    Jane Doe 5 Was Not Subject to the Terms

Ms. Doe 5 did not contract with Uber Technologies, Inc., but rather, contracted with "Uber B.V., a private limited liability company established in the Netherlands," and Uber concedes that Ms. Doe 5's agreement with Uber B.V. did not contain an Arbitration Clause.  *See*

---

[10]   The age of majority in both Georgia, where Jane Doe 8 created an account, and Michigan, where Jane Doe 8 was sexually assaulted at the hands of her Uber driver, is 18.

[11]   At the very least, questions of fact exist regarding whether Ms. Doe 8 repudiated her agreement within a reasonable amount of time.

Page **24** of **26**

Def.'s Mem. at 15.  Although Uber argues that it subsequently revised its Terms and provided Ms. Doe 5 with notice in November 2016, the revised Terms effective November 21, 2016 purport to be an agreement between the user and Uber USA, LLC – not the entity with which Ms. Doe 5 had initially contracted.  *See* Tonti Decl., Ex. H.  While the Terms in effect when she created her account provide that Ms. Doe 5 "may not assign [her] rights under these User Terms without prior written approval," there is nothing in the Terms prohibiting Uber from assigning its rights, and such a one-sided restriction would arguably be unconscionable.  *See Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 960 (N.D. Cal. 2015) ("[T]he Court assumes without deciding that the unilateral modification provision here is at least minimally substantively unconscionable.").  For the reasons discussed, Uber has failed to demonstrate that Ms. Doe 5's use of the Uber App after November 21, 2016 demonstrates an intent to be bound by the Terms.  *Supra* at 13-18.

### 4.    Jane Does 1, 4, 7 and 9 Did Not Contract With Defendant

The Terms in effect when Jane Does 1, 4, 7 and 9 created Uber accounts provide that the agreement is between the user and "Uber USA, LLC."  *See* Tonti Decl., Exs. A, C, G.  According to Defendant, "Uber USA, LLC is an affiliate of Uber Technologies, Inc."  Defs.' Mem. at 8 n.16.  However, Uber fails to provide any evidentiary support for this proposition or demonstrate the actual manner in which the entities are related, and the Terms do not define "affiliate."  Uber has failed to demonstrate that they have standing to pursue the relief they seek herein with respect to Jane Does 1, 4, 7 and 9.[12]

---

[12]  To the extent the November 2016 Terms are deemed to be operative, those Terms are also between the user and "Uber USA, LLC," and Uber therefore lacks standing to enforce the revised Terms.

*Memorandum of Points and Authorities in*                    *Doe v. Uber Technologies, Inc.*
*Opposition to Defendant Uber Technologies, Inc.'s*          *Case No.: 4:17-cv-06571(YGR)*
*Motion to Compel Arbitration*

## CONCLUSION

For the reasons set forth herein, Uber's motion to compel arbitration of Plaintiffs' claims arising under Section 17200 and the CLRA should be denied in its entirety.

Dated: May 29, 2018
        New York, New York                      Respectfully submitted,

**WIGDOR LLP**

By: _Jeanne Christen_____
    Jeanne M. Christensen
    Kenneth D. Walsh

85 Fifth Avenue
New York, NY 10003
Tel.: (212) 257-6800
Fax: (212) 257-6845
jchristensen@wigdorlaw.com
kwalsh@wigdorlaw.com

**ANDERSON & POOLE, P.C.**

Jamie C. Couche

601 California Street, Suite 1300
San Francisco, CA 94108
Tel.: (415) 956-6413
Fax: (415) 956-6416
jcouche@adplaw.com

*Counsel for Plaintiffs and the
Proposed Class*

*Memorandum of Points and Authorities in*
*Opposition to Defendant Uber Technologies, Inc.'s*
*Motion to Compel Arbitration*

*Doe v. Uber Technologies, Inc.*
*Case No.: 4:17-cv-06571(YGR)*